## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Janelle Taylor** | : |
| | : |
| | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **JOHNSON & JOHNSON** | :  **PLAINTIFF'S COMPLAINT** |
| | **AND JURY DEMAND** |
| **ORTHO-McNEIL** | : |
| **PHARMACEUTICAL, INC.** | : |
| | : |
| **JOHNSON & JOHNSON PHARMACEUTICAL** | : |
| **RESEARCH AND DEVELOPMENT, LLC, f/k/a** | : |
| **R.W. JOHNSON PHARMACEUTICAL RESEARCH** | : |
| **INSTITUTE,** | : |
| | : |
| **Defendants.** | : |
| | : |

COMES NOW THE PLAINTIFF, Janelle Taylor, by and through counsel, and files this

Complaint seeking judgment against Defendants JOHNSON & JOHNSON, ORTHO-McNEIL

PHARMACEUTICAL, INC., AND JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH

AND DEVELOPMENT (hereinafter "Defendants") and in support thereof states as follows:

### Parties

1.      Plaintiff, Janelle Taylor, is a citizen of D.C., currently residing at 4660 Martin Luther

King Highway., SW, Apt C103, Washington, D.C. 20032.  At all times relevant to this lawsuit,

Plaintiff resided in the District of Columbia.

2.      Plaintiff was prescribed Defendants' Product, the Ortho Evra Birth Control Patch, in Hyattsville, Maryland. However, Plaintiff was diagnosed with pulmonary embolism in the District of Columbia and subsequently has continued to receive medical treatment in the District of Columbia and Maryland.

3.      Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Defendant Johnson & Johnson is a resident and citizen of New Jersey. Defendant Johnson & Johnson is the parent company of Defendant Ortho-McNeil Pharmaceutical, Inc. and Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC.

4.      At all times relevant, Defendant Johnson & Johnson was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription Product Ortho Evra Birth Control Patch in the District of Columbia.

5.      Defendant Ortho-McNeil Pharmaceutical, Inc. is a Delaware corporation with its principal place of business at 1000 US Hwy. 2002, Raritan, New Jersey 08869-0602. Defendant Ortho-McNeil Pharmaceutical, Inc. is a resident and citizen of both Delaware and New Jersey. Defendant Ortho-McNeil Pharmaceutical, Inc. is a subsidiary of Johnson & Johnson.

6.      At all times relevant, Defendant Ortho-McNeil was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription Product the Ortho Evra Birth Control Patch in the District of Columbia.

7.      Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC is a New Jersey limited liability company with its principal place of business at 920 Rte. 202 South,

Raritan, New Jersey 08869-1420.  Defendant Ortho-McNeil Pharmaceutical, Inc. is the sole member of Johnson & Johnson Pharmaceutical Research and Development, LLC, and therefore, Defendant Johnson & Johnson Pharmaceutical Research and Development; LLC is a resident and citizen of both Delaware and New Jersey.  Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC is a wholly owned subsidiary of Johnson & Johnson, and was previously known as R.W. Johnson Pharmaceutical Research Institute.

8.      At all times relevant, Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription Product the Ortho Evra Birth Control Patch.

## Jurisdiction and Venue

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because it is an action between citizens of different states.

10.     The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 in that it arises under the laws of the United States.

11.     The Court has personal jurisdiction over these Defendants pursuant to District of Columbia's Long-Arm Statute, D.C. Code §13-423(a)(4) where Plaintiff, a resident of the District of Columbia, suffered a tortious injury within the District of Columbia, and Defendants regularly do or solicit business, engage in other persistent course of conduct, or derive substantial revenue from goods used or consumed in the District of Columbia, including their Product the Ortho Evra Birth Control Patch.

3

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391. Plaintiff is a resident of the District of Columbia. In addition, Plaintiff was diagnosed with pulmonary embolism in District of Columbia and subsequently has continued to receive medical treatment in the District of Columbia and in Maryland. At all relevant times herein, Defendants were in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling its product, the Ortho Evra Birth Control Patch in the District of Columbia. At all times relevant hereto, Defendants designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce and District of Columbia the aforementioned prescription drug. Defendants do substantial business in the District of Columbia and within this Federal District, advertised their product, received substantial compensation and profits from sales of the Ortho Evra Birth Control Patch, and made material omissions and misrepresentations and breaches of warranties in the District of Columbia.

13.    Jurisdiction over the Defendant is proper under the United States Constitution as well as under D.C. Code Ann. §13-334(a) (2001).

14.    In addition, jurisdiction and venue are proper under D.C. Code Ann. §13-423 (a) (2001).

## **FACTUAL BACKGROUND**

15.    Plaintiff Janelle Taylor suffered from pulmonary embolism at the age of 26 as a direct result of her use of the Ortho Evra Birth Control Patch.

16.    Defendants market the Ortho Evra Birth Control Patch as the first and only once-a-week birth control patch.

17.    Defendants market the Ortho Evra Birth Control Patch as providing the same efficacy as birth control pills in preventing pregnancy, but with more convenience than birth control pills because it is worn on the skin for three consecutive weeks, with the fourth week being "patch free."

18.    Defendants claim that the Ortho Evra Birth Control Patch helps prevent pregnancy the same way birth control pills do by preventing ovulation, by thickening the cervical mucus, and by changing the endometrium to reduce the chance of implantation.

19.    Unlike birth control pills, the Ortho Evra Birth Control Patch birth control patch is transdermal; meaning continuous levels of the hormones norelgestromin and ethinyl estradiol (progestin and estrogen, respectively) are delivered through the skin into the bloodstream.

20.    In response to the question of whether there are any side effects associated with the Ortho Evra Birth Control Patch, Defendants claim that the most frequent adverse event leading to discontinuation include nausea and/or vomiting, application site reaction, breast symptoms, headache, and emotional liability.

21.    Defendants failed to warn consumers and/or their health care providers that the Ortho Evra Birth Control Patch is more likely to cause blood clots than oral contraceptives; particularly those classified as second-generation oral contraceptives.

22.    Indeed, upon information and belief, adverse event records from the Food and Drug Administration show that a significantly higher number of women using the birth control patch reportedly suffered injury or death due to venous thromboembolism, compared to women using oral contraceptives.    Further, Defendants own clinical trials revealed a higher rate of venous thromboembolism in women on the patch compared to those using oral contraceptives in the study.

23.    On November 10, 2005, Defendants updated the prescribing information for Ortho Evra Birth Control Patch to include a new warning and provide additional information on the differences

5

between a weekly transdermal delivery system and a daily oral delivery system. The new warning states:

> **The pharmacokinetic (PK) profile for the ORTHO EVRA® patch is different from the PK profile for oral contraceptives in that it has higher steady state concentrations and lower peak concentrations. AUC and average concentration at steady state for ethinyl estradiol (EE) are approximately 60% higher in women using ORTHO EVRA® compared with women using an oral contraceptive containing EE 35 μg. In contrast, peak concentrations for EE are approximately 25% lower in women using ORTHO EVRA®. Inter-subject variability results in increased exposure to EE in some women using either ORTHO EVRA® or oral contraceptives. However, inter-subject variability in women using ORTHO EVRA® is higher. In general, increased estrogen exposure may increase the risk of adverse events. However, it is not known whether there are changes in the risk of serious adverse events based on the differences in pharmacokinetic profiles of EE in women using ORTHO EVRA® compared with women using oral contraceptives containing 35 μg of EE. (See CLINICAL PHARMACOLOGY, Transdermal versus Oral Contraceptives).**

24.    The new label dated November 10, 2005 also contains a new section entitled "Transdermal versus Oral Contraceptives." In a study of 32 healthy female volunteers, it was found that

> [The] overall exposure for NGMN [norelgestromin] and EE [ethinyl estradiol] (AUC and $C_{ss}$) was higher in subjects treated with ORTHO EVRA® for both Cycle 1 and Cycle 2, compared to that for the oral contraceptive, while $C_{max}$ values were higher in subjects administered the oral contraceptive. Under steady-state conditions, $AUC_{0-168}$ and $CC_{ss}$ for EE were approximately 55% and 60% higher, respectively, for the transdermal patch, and the $C_{max}$ was about 35% higher for the oral contraceptive, respectively. Inter-subject variability (%CV) for the PK parameters following delivery from ORTHO EVRA® was higher relative to the variability determined from the oral contraceptive.

25.    The November 10, 2005 label also provides that in the study of 32 healthy female volunteers, the percent change in systemic estrogenic activity related to the Sex Hormone Binding Globulin (SHBG) was higher for ORTHO EVRA® users compared to women taking the oral contraceptive.

26.    As a result of Defendants' claim regarding the effectiveness and safety of the Ortho Evra Birth Control Patch, Plaintiff Janelle Taylor's medical provider prescribed and Plaintiff began using the Ortho Evra Birth Control Patch in approximately March, 2004. Plaintiff Janelle Taylor used the Ortho Evra patch until on or about May 5, 2004, when she was diagnosed with a pulmonary embolism.

27.    In or around May 11, 2004, Plaintiff Janelle Taylor began suffering from shortness of breath. At that time, she was treated at the Greater Southeast Community Hospital (GSCH), located in the District of Columbia. Physicians at GSCH diagnosed Plaintiff with a pulmonary embolism. Plaintiff was treated at Greater Southeast Community Hospital with Lovenox and Coumadin. Plaintiff was discharged from GSCH on May 14, 2004, with orders to continue using Coumadin.

28.    On the morning on May 16, 2004, Plaintiff presented to the Emergency Department at Howard University Hospital (HUH), also located in the District of Columbia, with continuing shortness of breath. She was admitted for further evaluation, and was discharged on May 17, 2004, with orders to remain on Coumadin and to follow up with her physicians for ongoing monitoring of her status.

29.    As a direct and proximate result of using the Ortho Evra Birth Control Patch, Plaintiff Janelle Taylor suffered the serious and permanent physical injuries described above at the age of 26.

30.    Further, Plaintiff Taylor is now prohibited from using oral contraceptives and is more inclined to experience future medical complications as a result of the injuries sustained during her use of the Ortho Evra Birth Control Patch. Plaintiff remains on Coumadin therapy indefinitely.

31.    Prior to May of 2004, Defendants knew or should have known that use of the Ortho Evra Birth Control Patch created a higher risk of blood clots, heart attacks, thrombosis, pulmonary

embolism, and death than oral contraceptives, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

32.    Therefore, at the time Plaintiff used the Ortho Evra Birth Control Patch from approximately March, 2004 through May, 2004, Defendants knew or should have known that the use of the Ortho Evra Birth Control Patch created an increased risk to consumers of serious personal injury, including heart attack, deep vein thrombosis, pulmonary embolism, thrombi, and even death.

33.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of the Ortho Evra Birth Control Patch, Defendants failed to warn Plaintiff and/or her health care providers of said serious risks before she used the product.

34.    Had Plaintiff Janelle Taylor and/or her heath care providers known the risks and dangers associated with the Ortho Evra Birth Control Patch, she would not have used the Product and would not have suffered the serious effects of pulmonary embolism at the age of 26.

35.    As a direct and proximate result of Plaintiff's use of the Ortho Evra Birth Control Patch, Plaintiff has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to suffering from pulmonary embolism, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will effect her throughout her lifetime.

36.    Further, as a direct and proximate result of Plaintiff's use of the Ortho Evra Birth Control Patch, Plaintiff suffered significant mental anguish and emotional distress, was in fear for her life, and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

37.    Plaintiff Janelle Taylor has also incurred medical expenses and other economic harm including lost earnings, and will continue to incur expenses and lost earnings in the future, as a direct and proximate result of her use of the Ortho Evra Birth Control Patch.

## General Allegations Concerning Plaintiff and Her Damages

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states as follows:

38.    In approximately March of 2004, Plaintiff Janelle Taylor, was prescribed Defendants' Ortho Evra Birth Control Patch by her obstetrician/gynecologist.

39.    With no contributory negligence on her part, Janelle Taylor used the Ortho Evra Birth Control Patch beginning in approximately March 19, 2004, and continuing through approximately May of 2004.

40.    As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of Defendants, as described herein, Janelle Taylor was diagnosed at the Greater Southeast Community Hospital, located in the District of Columbia, as having a pulmonary embolism on or about May 11, 2004.

41.    As a direct and proximate result of the incident, Janelle Taylor underwent much physical pain, suffering, mental anguish, emotional distress, and incurred expenses for medical care and treatment.

42.    As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of Defendants, as described herein, Janelle Taylor required, and continues to require, reasonable and necessary health care, attention and services, and incurred, and continues to incur, medical, incidental, and service expenses pertaining to her injuries.

## Count I – Negligence

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

43.    At all times material to this lawsuit, Defendants owed Janelle Taylor duties of reasonable care and safety.

44.    Defendants' duties included, but were not limited to, carefully and properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing the Ortho Evra Birth Control Patch into the stream of commerce, and providing warnings with regard to the Product.

45.    Defendants negligently and carelessly breached the above described duties to Janelle Taylor by committing negligent acts and/or omissions including but not limited to:

(A)    Defendants failed to use ordinary care in designing, testing, and manufacturing the Product so as to avoid the high risk to users of unreasonable, dangerous side-effects, some of which are fatal, such as deep vein thrombosis, pulmonary embolism, stroke and heart attack.

(B)    Defendants failed to accompany the Product with adequate warnings that would alert consumers and other users to the potential adverse side effects associated with the use of the Product and the nature, severity and duration of such adverse effects;

(C)    Defendants failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of the Product;

(D)    Defendants failed to warn Janelle Taylor prior to actively encouraging the sale of the Product, either directly or indirectly, orally or in writing, about the possibility of sustaining a life-threatening injury as a result of the Product's use;

(E)    Defendants continued to promote the safety of the Product, while downplaying any risks, even after Defendants knew of the risk of deep vein thrombosis, pulmonary embolism, stroke and heart attack; and

(F)    Defendants were otherwise careless or negligent.

46.    Although Defendants knew or should have known the Ortho Evra Birth Control Patch caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market the Product to consumers, including Janelle Taylor, when there were safer contraceptive methods.

47.    In addition, Defendants had a legal duty to comply with the U.S. Food, Drug and Cosmetic Act, U.S. Code § 21 USC §301, et seq., and regulations promulgated thereunder.

48.    Defendants negligently and carelessly violated the laws and regulations of the United States including, but not limited to the following: 21 CFR §330.10(a)(4)(v)(Labeling); 21 CFR § 1.2 (a) (Labeling); 21 CFR 600.80 (Postmarketing reporting of Adverse experiences); 21 CFR §314.50 (Post Marketing Reports of Adverse Drug Experiences), as well as regulations relating to the promotion of drugs for unlabeled uses. The violations of those and other statutes and regulations constitute negligence per se.

49.    Defendants knew or should have known that consumers, like Janelle Taylor, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

50.    Through their negligent acts and/or omissions, Defendants directly and proximately caused the injuries of Janelle Taylor.

## Count II – Strict Liability/Restatement of Torts §402A

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

51.    At all times material to this lawsuit, Defendants manufactured the Ortho Evra Birth Control Patch.

52.    At all times material to this lawsuit, Defendants engaged in the business of selling the Ortho Evra Birth Control Patch in the District of Columbia.

53.    Defendants sold the Product, which was used by Janelle Taylor as alleged in this Complaint.

54.    The Product used by Janelle Taylor was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to use it.  In addition, the Product was dangerous to the extent beyond that which could reasonably be contemplated by Janelle Taylor, and any benefit of the Product was far outweighed by the serious and undisclosed risks of its use.

55.    The Product used by Janelle Taylor was defective at the time it was sold by Defendants or left their control.

56.    The Product used by Janelle Taylor was expected to reach the user without substantial change in the condition in which it was sold.

57.    The Product used by Janelle Taylor reached her without substantial change in the condition in which it was sold.

58.    Janelle Taylor was a person who would reasonably be expected to use the Product.

59.    The defects in the Ortho Evra Birth Control Patch used by Janelle Taylor were a direct and proximate cause of the injuries and damages sustained by Janelle Taylor as set forth in this Complaint.

## Count III – Restatement of Torts §402B

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

60.    At all relevant times herein, Defendants were in the business of selling the Ortho Evra Birth Control Patch.

61.    Through their actions and omissions in advertising, promoting, reporting to the FDA, labeling, and otherwise, Defendants made public misrepresentations of material facts to, and/or concealed material facts from consumers like Janelle Taylor, concerning the character, safety, and effectiveness of the Product.

62.    Those public misrepresentations and omissions include, but are not limited to those set forth in the general allegations section of this Complaint.  Those false representations and omissions include but are not limited to the following:

(A)    Defendants failed to disclose that sufficient pre-clinical and clinical testing and adequate post-marketing surveillance to determine the safety and side effects of the Product had not been done;

(B)    Defendants failed to timely disclose, and/or intentionally concealed, the interim and final results of studies showing that use of the Ortho Evra Birth Control Patch increased the risk for blood clots, deep vein thrombosis, pulmonary embolism, stroke, heart attack, and death; and

    (C)     Defendants failed to include adequate warnings with the Product about the potential and actual risks and the nature, scope, severity, and duration of any serious side-effects of the Product, including without limitation, the risk of deep vein thrombosis and pulmonary emboli.

63.     Defendants were obligated to disclose the foregoing risks, but failed to adequately and timely do so even after they were in possession of information concerning those risks.

64.     In the alternative, Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of the Product, failed to disclose facts indicating that the Product could cause blood clots, deep vein thrombosis, pulmonary embolism, stroke, heart attack and/or death, and otherwise failed to exercise reasonable care in communicating the information concerning the Product to Janelle Taylor, and/or concealed facts which were known to Defendants.

65.     Janelle Taylor was not aware of the falsity of the foregoing representations, nor was she aware that material facts concerning the Product had been concealed or omitted. In reliance upon Defendants' misrepresentations, Janelle Taylor was induced to and did purchase the Product and did use the Product. If Janelle Taylor had known the true facts concerning the risks of the use of the Product, in particular, the risk of pulmonary embolism, she would not have used the Product.

66.     Janelle Taylor's reliance upon Defendants' misrepresentations was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning the Product, while Janelle Taylor was not in a position to know the true facts, and because Defendants aggressively marketed the use of the Product and concomitantly downplayed the risks in its use, thereby inducing Janelle Taylor to use this product in lieu of other, safer contraceptive products. At all times relevant, Defendants' corporate officers, directors and/or managing agents knew of and ratified the acts of Defendants, as alleged herein.

67.    As a direct and proximate result of Janelle Taylor's reliance on Defendants' misrepresentations concerning the risks and benefits of the Ortho Evra Birth Control Patch, Janelle Taylor suffered and her family continues to suffer from the injuries and damages as set forth in this Complaint.

## Count IV – Fraud

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

68.    Defendants intentionally, willfully, or recklessly concealed and misrepresented past and present facts to consumers and users, including Janelle Taylor, which they had a duty to disclose.

69.    The facts concealed and misrepresented include, but are not limited to, those set forth in the General Allegations section of this Complaint.

70.    Each of the facts concealed and misrepresented was material.

71.    Defendants concealed and misrepresented material facts to the consuming public with the intent that the consuming public, like Janelle Taylor, would take a course of action that it would otherwise not have taken if it had been informed of the actual facts known to Defendants, including the totality of the risks associated with the use of the Product.

72.    Janelle Taylor took such action relying on the assumption that the undisclosed facts did not exist and/or were different than they actually were.

73.    The reliance of Janelle Taylor was justified.

74.    As a result of Janelle Taylor's reliance on the incomplete and inaccurate information communicated by Defendants and her assumption that the non-disclosed facts about the risks associated with the use of the Ortho Evra Birth Control Patch did not exist, Janelle Taylor suffered the injuries and damages alleged in this Complaint.

## Count V – Express Warranties

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

75.    The Ortho Evra Birth Control Patch, which was designed, tested, and manufactured by Defendants, and distributed, promoted and sold by Defendants, was expected to, and did, reach Janelle Taylor without a substantial change in its condition.

76.    Defendants, through their advertising and promotional materials, expressly warranted that the Product was safe for the use for which it was intended.

77.    Defendants breached said express warranties in that the Product was unsafe in light of the risk of life-threatening side effects associated with its use, including, but not limited to, pulmonary embolism.

78.    Janelle Taylor relied to her detriment on the express warranties of Defendants.

79.    As a direct and proximate result of Defendants' breach of express warranties, Janelle Taylor suffered and her family continues to suffer from the injuries and damages set forth in this Complaint.

## Count VI – Implied Warranties

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

80.    The Ortho Evra Birth Control Patch, which was designed, tested, and manufactured by Defendants, and distributed, promoted and sold by Defendants, was expected to, and did, reach Janelle Taylor without a substantial change in its condition.

81.    Defendants, through their advertising and promotional materials, impliedly warranted that the Product was safe for the use for which it was intended.

82.     Defendants breached said implied warranties in that the Product was unsafe in light of the risk of life-threatening side effects associated with its use, including, but not limited to, pulmonary embolism.

83.     Janelle Taylor relied to her detriment on the implied warranties of Defendants.

84.     As a direct and proximate result of Defendants' breach of implied warranties, Janelle Taylor suffered and her family continues to suffer from injuries and damages set forth in this Complaint.

## Count VII – Violation of the D.C. Deceptive Trade Practices Act

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

85.     Defendants and at all times herein mentioned were engaged in the business of the sale of consumer goods in the District of Columbia, including the Ortho Evra Birth Control Patch.

86.     The aforesaid unfair and deceptive acts were done in violation of the following subsections of District of Columbia Unlawful Trade Practices Act, D.C., Code §28-3904:

(a) misrepresentation that the drug products were of a particular quality;

(b) misrepresentation as to material facts which have the tendency to mislead;

(c) failure to state material facts which failure tends to mislead;

(d) offered for sale or distributed drug products in a condition, which was, inconsistent with that warranted by operation or requirement of federal law.

87.     As a direct and proximate result of such unfair and deceptive trade practices, Plaintiff suffered the aforesaid injuries and damages.

88.    Under said Act, Plaintiff Janelle Taylor is entitled to treble damages or, in the alternative, punitive damages and reasonable attorney's fees, and any other relief, which this court deems proper.

## Count VIII – Failure to Warn/Restatement of Torts § 388

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

89.    Defendants owed Janelle Taylor duties of reasonable care to adequately warn her of the risks associated with the use of the Ortho Evra Birth Control Patch.

90.    Defendants knew or reasonably should have known that the warnings provided to users of the Product regarding the risks associated with its use were incorrect and misleading in at least the following material respects:

(A)    The Ortho Evra Birth Control Patch was unaccompanied by proper warnings regarding all possible side effects associated with its use and the comparative severity, incidence, and duration of such adverse effects; and

(B)    The Ortho Evra Birth Control Patch was defective due to inadequate post-marketing warnings or instructions because Defendants knew or should have known of the risks of injury from the Product, and they nonetheless failed to provide adequate warnings to users or consumers and continued aggressively to promote the Product.

91.    By failing to warn Janelle Taylor of the adverse health risks associated with the consumption of the Product, Defendants breached their duties to Janelle Taylor of reasonable care and safety.

92.    As a direct and proximate result of Defendants' failure to adequately warn Janelle Taylor of the risk of pulmonary embolism associated with the use of the Ortho Evra Birth Control Patch, Janelle Taylor suffered and her family continues to suffer the injuries and damages set forth in this Complaint.

## Count IX – Intentional Infliction of Emotional Distress

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

93.    Defendants are liable to Plaintiff in that they intentionally and recklessly inflicted on them emotional distress by preventing public awareness of the risks associated with the use of the Ortho Evra Birth Control Patch.

94.    Defendants knew or should have known that their failure to fully and truthfully inform the public would cause severe and grave emotional distress in those users who ingested the Product and subsequently had an adverse event that caused them permanent, debilitating, and/or lethal injuries.

95.    Defendants' intentional decision to withhold and mis-report information concerning the high risk of developing a pulmonary embolism was motivated by their desire to preserve sales of the Product.

96.    Defendants' knowing, intentional and conscious decision to withhold this information from the public and Janelle Taylor was outrageous and intolerable and offends the moral standards of this community.

97.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff suffered severe emotional distress, including but not limited to, depression and anxiety.

## Count X – Punitive Damages

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

98.     The conduct of Defendants in designing, testing, manufacturing, and Defendants conduct in promoting, advertising, selling, marketing, and distributing the Ortho Evra Birth Control Patch, and in failing to warn Janelle Taylor and other members of the public of the dangers inherent in the use of the Ortho Evra Birth Control Patch, which were well known to Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequence, or of the rights and safety of others, particularly Janelle Taylor.  Such conduct includes, but is not limited to, the following:

(A)     Upon information and belief, Defendants actually knew of the Product's defective nature, as set forth herein, but continued to design, manufacture, market, and sell the Product so as to maximize sales and profits at the expense of the health and safety of the consuming public, including Janelle Taylor, and in conscious disregard of the foreseeable harm caused by the Product;

(B)     Defendants, who spends millions of dollars a year researching and developing medicines, and aggressively marketed the Product, devoted far less attention to conducting sufficient pre-clinical and clinical testing and adequate post-marketing surveillance of this Product.

(C)     Defendants continued to promote the safety of the Product, while providing to consumers no adequate warnings at all about the risk of blood clots, deep vein thrombosis, pulmonary embolism, stroke, heart attack, and

death associated with the Product, even after Defendants knew of that risk from adverse event reports, pre-clinical and clinical testing, and post-marketing surveillance; and

(D)     Defendants had knowledge of safer alternative designs for their Product and failed to substitute such a safer design.

## Count XI – Damages

Plaintiff incorporates herein by reference the paragraphs of this Complaint and further states that:

99.     WHEREFORE, Plaintiff seeks judgment in her favor against the Defendants as follows:

    a.     Severe and permanent physical and medical injuries and associated disabilities;

    b.     Severe past and future pain and suffering and mental anguish occasioned by the resulting injuries and disabilities;

    c.     Loss of enjoyment of life;

    d.     Increased risk of health problems;

    e.     Loss of past and future economic losses and income;

    f.     Past and future medical, rehabilitation, and life care expenses;

    g.     Past and future medical monitoring;

    h.     Past and future medical expenses;

    i.     Any and all other damages to be shown at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants JOHNSON & JOHNSON, ORTHO-McNEIL PHARMACEUTICAL, INC., AND JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT jointly and severally, on grounds set

forth in Counts I through XI, in the amount of Twenty Million Dollars ($20,000,000.00) in

compensatory damages, and Twenty Million Dollars ($20,000,000.00) in punitive damages, plus costs

and attorney's fees, and for such other and further damages and relief as this Court may deem

appropriate.

By: ASHCRAFT & GEREL, LLP

Michelle A. Parfitt , Esq.
Jennifer L. Orendi, Esq.
ASHCRAFT & GEREL, LLP
2000 L Street NW, Suite 400
Washington, DC 20036
(202) 783-6400

22

## **REQUEST FOR JURY TRIAL**

Plaintiff, by their undersigned counsel, hereby requests a jury trial on all counts in this action.

Michelle A. Parfitt, Esq.

| ☐ G.  *Habeas Corpus/2255* | ☐ H.  *Employment Discrimination* | ☐ I.  *FOIA/PRIVACY ACT* | ☐ J.  *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K.  *Labor/ERISA (non-employment)* | ☐ L.  *Other Civil Rights (non-employment)* | ☐ M.  *Contract* | ☐ N.  *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V.  ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

USC Section 1332 Injury Arising-Washington D.C

**VII.  REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** 20,000,000.00   Check YES only if demanded in complaint   **JURY DEMAND:** ☒ YES  ☐ NO

**VIII.  RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES  ☒ NO   If yes, please complete related case form.

**DATE**   SIGNATURE OF ATTORNEY OF RECORD   11-29-06

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS Johnson & Johnson |
|---|---|
| Taylor, Janelle | Ortho-McNeil Pharmaceutical, Inc |
| | Johnson & Johnson Pharmaceutical |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF District of | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Middlesex County |
| (EXCEPT IN U.S. PLAINTIFF CASES) Columbia | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| Michelle A. Parfitt, Ashcraft & Gerel | |
| 2000 L Street N.W. Suite 400 | |
| Washington D.C. 20036 | |

---

**II BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☒ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

☐ **E. General Civil (Other) OR** ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)